IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ISHMAEL RAMSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-011 |
| | ) | |
| TAKERRA JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Telfair State Prison in Helena, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case file pursuant to 42 U.S.C. § 1983. Defendant moves for summary judgment. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 25), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

**I.   PROCEDURAL BACKGROUND**

Plaintiff submitted his amended complaint on May 23, 2022, and, because he is proceeding IFP, the Court screened the amended complaint and found Plaintiff had arguably stated a viable excessive force claim against Defendant Johnson. (Doc. no. 14.) The Court recommended dismissal of all other defendants and claims, as well as Plaintiff's official capacity monetary damage claims against Defendant Johnson. (Doc. no. 15.) United States District Judge Dudley H. Bowen adopted the recommendation as the opinion of the Court on

July 6, 2022. (Doc. no. 18.) Defendant filed her answer on August 5, 2022, and the Clerk issued a Scheduling Notice setting deadlines for the case. (Doc. nos. 21, 22.)

Consistent with the case deadlines, Defendant filed a motion for summary judgment on January 23, 2023. (Doc. no. 25.) At that time, the Clerk of Court issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding. (See doc. no. 26.) When Plaintiff failed to respond, the Court again also explained the rights and requirements associated with responding and extended Plaintiff's time to respond to Defendant's motion. (Doc. no. 27.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.[1]

In accordance with Local Rule 56.1, Defendant submitted a Statement Of Material Facts ("SMF") in support of her summary judgment motion. (Doc. no. 25-1.) Because Plaintiff did not file a responsive statement, the Court deems admitted all portions of Defendant's statement having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56.[2] See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants'

---

[1] The Court also explained summary judgment motions, along with the rights and requirements associated with responding, in its June 6, 2022 Order. (Doc. no 14, pp. 6-7.)

[2] Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (same).

However, this does not automatically entitle Defendant to summary judgment because as the movant, Defendant continues to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review the record "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II. FACTS

### A. Use of Pepper Spray

On February 13, 2022, Plaintiff was in administrative segregation in Telfair State Prison in cell E-2-229 with his cellmate, Angel Perez. (SMF ¶¶ 1-2, 8.) Plaintiff's cell was approximately four to five feet wide and nine feet deep, and the cell door had a tray flap through which prison staff delivered and retrieved food trays. (SMF ¶¶ 5-8.) Trays are usually retrieved four minutes after delivered, and the tray flaps remain opened and unlocked only during that time. (See SMF ¶¶ 6-7.)

Plaintiff and Perez received their food trays around 2:40 pm, and Defendant came by shortly afterwards to retrieve the trays and lock the flaps. (SMF ¶ 13.) When Defendant approached Plaintiff's cell, Perez was standing by the cell door with his arm through the flap, preventing Defendant from closing and locking the flap. (SMF ¶ 14.) Perez and Defendant began arguing and struggling with the flap. (SMF ¶¶ 14-15.) Plaintiff was uninvolved and remained

3

lying on the bottom bunk bed in the cell throughout their forty second argument. (SMF ¶¶ 10, 16.) Plaintiff and Defendants' versions of the events diverge at this point.

In her declaration, Defendant simply states she "repeatedly advised" Perez to remove his arm from the flap, but he refused and punched her in the stomach through the flap. (Doc. no. 25-3, Johnson Decl. ¶ 8.) Defendant immediately called for assistance and sprayed pepper spray through the flap to gain control of Perez. (Id. ¶ 9.) Against Defendant's intentions, the spray inadvertently hit Plaintiff. (Id. ¶ 10.)

In his amended complaint, Plaintiff alleges Defendant yelled at Perez to move his arm from the tray flap, but then she slammed the flap on his arm, successfully closing it. (Doc. no. 13, p. 19.) Twenty seconds later, she reopened the flap and sprayed pepper spray through the flap and onto Plaintiff and Perez. (Id.) In his deposition, Plaintiff elaborates Perez had his arms through the flap holding two empty bottles he wanted Defendant to refill with water as she retrieved the trays. (Doc. no. 25-2, Deposition, p. 43.[3]) Defendant told Perez no, and they began arguing and pushing the ten-to-fifteen-pound flap back and forth. (Id. at 43-45.) Defendant pressed her body against the flap to close it, but Perez was unable to remove his arms while she did so. (Id. at 47-48, 51, 54-55.) After around forty seconds of arguing, Perez pushed against the flap to remove his arms, hitting Defendant with the flap. (Id. at 44, 48, 55, 59-60.) Defendant was then able to close and lock the flap. (Id. at 49, 59-61.)

Plaintiff next explained that after Defendant had closed the flap, Perez began yelling at her through under the door, "I'm going to write your fat ass up." (Id. at 49, 61) Defendant returned,

---

[3]The Court cites to the page numbers in the body of the deposition transcript rather than those assigned by CM/ECF.

4

unlocked and opened the flap, and sprayed pepper spray into the cell, intending to hit Perez. (Id. at 49, 61-62) A stream of spray inadvertently hit Plaintiff's face as he remained lying on the bottom bunk in the small cell. (Id. at 62-65.) Plaintiff covered his face, screamed for Defendant to stop, and ran to shelter behind a locker. (Id. at 65-66, 68.) Defendant "kept spraying around the room 'til she got to [Perez]." (Id. at 65-66.) Defendant sprayed the cell for around a minute, but the spray only hit Plaintiff for ten seconds, and Plaintiff only began to flee the spray after the first four to five seconds. (See id. at 69-70.) Immediately afterwards, Defendant called for CERT officers to assist her in managing Perez. (Id. at 51-52.) The CERT officers entered the cell and tased Perez in order to handcuff and remove him. (Id. at 52-53, 67, 70-71.)

### B. Effects of the Pepper Spray

At 2:50 pm—just minutes after Defendant sprayed Plaintiff—prison staff took Plaintiff and Perez outside so that they could get some fresh air and decontaminate. (SMF ¶ 23). Plaintiff told medical staff that he was okay, and staff found he had no injuries or treatment needs from the incident. (SMF ¶ 24.) Medical staff cleared both Perez and Plaintiff, and they returned to their cell. (SMF ¶ 24). However, Plaintiff alleges in his deposition he had headaches and intense rashes that lasted for several days afterwards. (SMF ¶ 25.) Plaintiff further attributes the pepper spray to his worsening vision, though Plaintiff confesses and medical evidence shows he had been treated for blurry vision and cataracts well before the February 13th accident. (SMF ¶ 26.)

Back in the cell, pepper spray covered Plaintiff's hair, clothes, bedding, cell window, and cell walls. (Deposition, p. 74.) Plaintiff tried to clean the spray off the walls and out of his hair and threw away his blanket. (Id.) At the time, the cell's sink had not worked for three days, which is why Perez asked Defendant to fill up water bottles in the first place. (Id. at 30, 88.) Plaintiff

5

had to use water from his toilet to wash the remaining spray off his hair, body, and cell. (Id. at 74.) Plaintiff alleges that washing with water caused the spray to burn "even worse" than it would have if he had been given access to a chemical shower. (Id. at 74.) At some later point, Plaintiff wrote a letter to medical, and he believes he was "not on good terms" with the nurse who checked him on February 13th. (Id. at 73.) Plaintiff was next seen by medical staff eight to nine days after the accident. (Id.)

### III.   DISCUSSION

#### A.   Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

B. **Overview of the Excessive Force Legal Landscape**

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. Id. *De minimi*s uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it

7

"may later seem unnecessary in the peace of a judge's chambers . . . ." Id. at 9 (citation omitted).

However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). That is, the extent of a plaintiff's injury may be considered, but it is not the central consideration, and "significant injury" is not required to maintain an excessive force claim. Id. at 37. Thus, the "core judicial inquiry" for an Eighth Amendment excessive force claim is not based on the extent of Plaintiff's injury, but rather on "the nature of the force" used, *i.e.*, "whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Id. at 39.

Subjectively, Plaintiff must show that the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is,

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

The subjective component analysis narrows the precise inquiry applicable at the summary judgment stage as follows:

8

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322). Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375. Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6; Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*). For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

    **C.    Defendant Did Not Act Maliciously and Sadistically to Cause Harm to Plaintiff**

While Plaintiff and Defendant dispute significant, material facts concerning why Defendant pepper sprayed Plaintiff's cell, there is no dispute Plaintiff was merely an unintended victim of the pepper spray. Defendant was taking action against Plaintiff's

9

cellmate, not Plaintiff. When it comes to inadvertent or accidental use of force, including force intentionally used against one prisoner that unintentionally harms another, courts within the Eleventh Circuit have found such facts "fail to state the requisite intent to support an excessive force claim." Houston v. Adams, No. CV621-050, 2022 WL 18670857, at *2 (S.D. Ga. Dec. 12, 2022) , *adopted by* 2023 WL 387434 (S.D. Ga. Jan. 25, 2023).

For example, in Barcelona v. Rodriguez, a prisoner plaintiff's cellmate refused to enter their cell upon being ordered. 847 F. App'x 739, 740 (11th Cir.) (*per curiam*), *cert. denied*, 142 S. Ct. 183 (2021). After he finally complied and joined plaintiff in the cell, an officer pepper sprayed the cellmate, but the spray inadvertently hit the cell wall and Plaintiff's face. See id. A claim for excessive force requires a showing that defendant acted *maliciously and sadistically* to cause the plaintiff harm, and the Eleventh Circuit held "[t]hat some of the spray aimed at [the cellmate] hit the wall near Plaintiff's bed and injured Plaintiff is insufficient to establish that [the officer] had the requisite intent to cause harm to Plaintiff." Id. at 741. The Court therefore found Plaintiff had no plausible claim for excessive force. Id.

Similarly, in Haynes v. Billingsley, a prisoner plaintiff was inadvertently sprayed when an officer "spray[ed] mace all over" plaintiff's cell after a verbal argument with plaintiff's cellmate. No. 719CV00844LSCJHE, 2020 WL 4719111, at *3 (N.D. Ala. July 15, 2020), *adopted by* 2020 WL 4698464 (N.D. Ala. Aug. 13, 2020). Plaintiff was then left in the cell handcuffed with mace covering his clothes, face, and body, causing severe breathing issues and burning. See id. An internal prison investigation concluded the officer's actions were unjustified, and he was disciplined. Id. However, the District Court granted summary judgment against plaintiff, explaining,

> Although it is unfortunate that Plaintiff was a bystander to the events that took place, [the officer] did not apply force in a malicious or sadistic manner towards Plaintiff. Plaintiff does not assert that [the officer] ever sprayed him directly, intentionally, or had any intent to maliciously harm him.
>
> . . . .
>
> [The officer's] conduct towards Plaintiff may have been negligent, but negligence is insufficient to sustain a claim based on a violation of the Eighth Amendment. See Daniels v. Williams, 474 U.S. 327, 329-30 (1986) (Section 1983 does not impose liability for negligent acts); see also Lanier v. Smith, No. 1:17-cv-925, 2017 WL 5166706, *3 (W.D. Mich. Nov. 8, 2017) (plaintiff, who did not bring action as the "intended target of the chemical spray" but was "just a bystander who suffered the effects of the chemical agent because of an inadequate ventilation system," at best had a claim of negligence against the officers).

Id. at *3-4.

This Court agrees. Plaintiff cannot meet the elements of excessive force under the Eighth Amendment based on the undisputed facts. See Watson v. Albritton, No. 521CV00186KOBJHE, 2023 WL 1790059, at *4 (N.D. Ala. Jan. 12, 2023) (finding no excessive force when officer "was not attempting to spray the chemical agent into [plaintiff's] cell but did so inadvertently when he tried to spray the chemical agent on the inmate housed next to him"), *adopted by* 2023 WL 1788524 (N.D. Ala. Feb. 6, 2023); Winfrey v. Vannoy, No. CV 16-806-BAJ-EWD, 2019 WL 3308427, at *2 (M.D. La. June 6, 2019) (explaining "[a]ny effects suffered by Plaintiff were unintentional and de minimis, not repugnant" when defendant used pepper spray against plaintiff's cellmate), *adopted by* 2019 WL 3307835 (M.D. La. July 23, 2019); see also Law. v. City of Council Bluffs, 361 F.3d 1099, 1105 (8th Cir. 2004) (finding no excessive force against vehicle passenger regardless of foreseeability when officer pepper sprayed driver/arrestee and accidentally sprayed passenger's face); Blash v. Waycaster, No. CV 621-75, 2022 WL 5177103, at *3 (S.D. Ga. Aug. 26, 2022) ("Plaintiff has

11

not alleged, and the Court cannot reasonably infer, that any officer *intended* to slam his finger in the cell door . . . . He alleges something more akin to negligence, or simply, an accident occurring during an intense exchange."); Gardner v. Mack, No. CIV.A. 12-0281-CG-C, 2015 WL 877249, at *8 (S.D. Ala. Mar. 2, 2015) ("The evidence in the record is sufficient for the Court to determine Defendant . . . did not act with malice or intent to cause harm or injury to any inmate housed in F block, particularly Plaintiff, when he inadvertently discharged the FN303 pepper ball spray gun.").

The uncontested fact that Defendant only intended to pepper spray Plaintiff's cellmate means Plaintiff cannot meet the subjective component of an excessive force claim, regardless of his injuries. See Brown v. Oge, No. 5:15-CV-89, 2019 WL 7562653, at *4 (S.D. Ga. Dec. 19, 2019) ("Indeed, courts need not consider the Whitley factors unless there is some evidence that a defendant's use of force may have been intentional." (citing Gardner, 2015 WL 877249, at *8-9)), *adopted by* 2020 WL 133645 (S.D. Ga. Jan. 10, 2020). Defendant did not act maliciously and sadistically to cause harm to Plaintiff. Rather, Plaintiff was merely the victim of Defendant's negligence, which cannot support liability under the Eighth Amendment and § 1983. See Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) ("Allegations of negligent conduct do not state a constitutional claim and thus, are not actionable under § 1983" (citing Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003))). Accordingly, no reasonable juror could return a verdict for Plaintiff, and summary judgment is appropriate.

### D. Defendant's Arguments Regarding Immunity and Damages are Moot

Defendant argues she is entitled to qualified immunity, and, even if a constitutional violation is found, Plaintiff cannot recover compensatory or punitive damages. (Doc. no. 25-6, pp. 12-16.) Because Defendant is entitled to summary judgment on the substantive merits of Plaintiff's claims as discussed *supra*, the issues of immunity and damages are ultimately moot, and the Court will not address them. See Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (*per curiam*).

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 25), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 1st day of May, 2023, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA